## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 08 2018, 5:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Benjamin Loheide
Law Office of Benjamin Loheide
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Connie D. Richey, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 8, 2018 <br><br> Court of Appeals Case No. 03A01-1710-CR-2404 <br><br> Appeal from the Bartholomew Superior Court <br><br> The Honorable James D. Worton, Judge <br><br> Trial Court Cause No. 03D01-1705-F5-2824 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Connie Richey was convicted of dealing in a narcotic drug, a Level 5 felony, and dealing in a substance represented to be a controlled substance, a Level 6 felony. Richey was sentenced to consecutive terms of four and one-half years and one and one-half years, respectively, for a total of six years to be executed at the Indiana Department of Correction. Richey now appeals, raising the sole issue of whether her sentence is inappropriate in light of her character and the nature of her offense. Concluding her sentence is inappropriate, we reverse and remand.

# Facts and Procedural History

[2] On March 22, 2016, a confidential informant contacted Detective Chad Moore of the Columbus Police Department and informed him that she could introduce him to Connie Richey, a prospective drug dealer, and arrange for a drug buy. At around 9 p.m., Detective Moore, operating undercover, drove to a prearranged address and parked his vehicle out front. Having viewed photographs of Richey to familiarize himself with her appearance, Detective Moore recognized Richey as she approached his vehicle. Detective Moore gave Richey $100 in exchange for one gram of a substance Richey purported to be methamphetamine, but was later revealed to be a look-alike substance. Detective Moore stated that he wished to buy "boy," Transcript, Volume II at 64, a slang term for heroin, and Richey responded that she did not have any herself, but she would check with someone else in the residence. Richey

emphasized the potency of the heroin, telling Detective Moore, "[t]hey say it's fire too. I mean I don't touch the sh*t." *Id.* at 65.

[3] The next day, Richey called Detective Moore and informed him that someone in the building could sell "boy," and that she would let him know further details through the confidential informant. Detective Moore and the confidential informant then arranged for the purchase of five packs of heroin for $100. Detective Moore returned to Richey's residence, this time accompanied by Detective Kelly Hibbs, and conducted another drug buy. Richey again emphasized the potency of the heroin and explained that she had told the source of the heroin, "I said well the sh*t what that is [sic] I'm kinda scared of it cause my daughter had a six year addiction . . . ." *Id.* at 72.

[4] On May 19, 2017, the State charged Richey with dealing in a narcotic drug, a Level 5 felony, and dealing in a substance represented to be a controlled substance, a Level 6 felony. Richey was found guilty of both charges after a two-day jury trial in which audio recordings of the drug deals were played for the jury.

[5] The presentence investigation report reflected that Richey's lengthy criminal history began with an arrest for theft in 1986. Richey pleaded guilty to driving while intoxicated and driving while suspended, both Class A misdemeanors, in 2000, and criminal conversion, a Class A misdemeanor, in 2007. In 2010, Richey was again arrested for driving while suspended, a Class A misdemeanor, and in 2012, Richey pleaded guilty to theft, a Class D felony,

and was sentenced to three years with two years suspended. In 2015, Richey was again charged with two counts of criminal conversion, both Class A misdemeanors, and pleaded guilty to receive a sentence of one year, with all but two days suspended. During the course of Richey's various terms on probation, five petitions to revoke her probation were filed and she has admitted to numerous probation violations.

[6] At sentencing, the trial court found Richey's criminal history and history of probation violations as aggravating circumstances, but found no mitigating circumstances. The trial court explained:

> [T]he evidence was overwhelming. And you still take no responsibility for your actions, blame others, . . . and the Court . . . looks at your probation performance in the past and doesn't . . . think you are a good candidate for probation in this case.

Tr., Vol. II at 236. The trial court sentenced Richey to four and one-half years for dealing in a narcotic drug, a Level 5 felony, and to one and one-half years for dealing in a counterfeit substance, a Level 6 felony, with the terms to be served consecutively. Richey now appeals.

# Discussion and Decision

## I. Standard of Review

[7] Article 7, Section 6 of the Indiana Constitution provides this court with the authority to review and revise a criminal sentence. Indiana Appellate Rule 7(B) explains that we may revise a sentence "if, after due consideration of the trial

court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Because a trial court's judgment "should receive considerable deference[,]" *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008), our principal role is to "leaven the outliers," *id.* at 1225. "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The defendant bears the burden to persuade this court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). We may rely on any factors appearing in the record in making the determination of whether a sentence is inappropriate. *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct. App. 2011), *trans. denied*.

## II. Inappropriate Sentence

### A. Nature of the Offense

[8] On appeal, Richey asserts that *Beno v. State*, 581 N.E.2d 922 (Ind. 1991), and its progeny prohibit a trial court from imposing consecutive sentences for her two convictions.

[9] In *Beno*, the defendant was convicted of two counts of dealing in cocaine and one count of maintaining a common nuisance after two controlled buys at his house—occurring just four days apart—and the trial court ordered him to serve

consecutive sentences on the three counts. On transfer, our supreme court explained:

> Beno was convicted of committing virtually identical crimes separated by only four days. Most importantly, the crimes were committed as a result of a police sting operation. As a result of this operation, Beno was hooked once. The State then chose to let out a little more line and hook Beno for a second offense. There is nothing that would have prevented the State from conducting any number of additional buys and thereby hook Beno for additional crimes with each subsequent sale. We understand the rationale behind conducting more than one buy during a sting operation, however, we do not consider it appropriate to then impose maximum and consecutive sentences for each additional violation. If Beno, for instance, had sold drugs to different persons, or if he had provided a different type of drug during each buy, the consecutive sentences imposed might seem more appropriate. Here, however, because the crimes committed were nearly identical State-sponsored buys, consecutive sentences were inappropriate.

*Id.* at 924. The court then revised the defendant's sentence from consecutive terms to concurrent terms. *Id.*

[10] Next, in *Gregory v. State*, 644 N.E.2d 543 (Ind. Ct. App. 1994), a confidential informant purchased a total of forty-two grams of cocaine in four different transactions over a ten-day period. After a jury found the defendant guilty of four counts of delivery of more than three grams of cocaine, all Class A felonies, the trial court imposed consecutive sentences for an aggregate term of 120 years. On transfer, our supreme court explained:

> As in *Beno*, Gregory sold the same drug to the same informant on several occasions over a short period of time. Presumably, the police could have set up any number of additional transactions, each time adding an additional count against Gregory. While the police may find it necessary to conduct a series of buys, the trial court should be leery of sentencing a defendant to consecutive terms for each count. We hold that on these facts, a sentence of 120 years was inappropriate.

*Id.* at 546.

[11] Although *Beno* opined that if the defendant "had provided a different type of drug during each buy, the consecutive sentences imposed might seem more appropriate," 581 N.E.2d at 924, we identified this statement as dicta in *Hendrickson v. State*, 690 N.E.2d 765, 767 (Ind. Ct. App. 1998). There, police conducted five controlled buys over a period of two months in which the defendant sold marijuana, methadone, and two different legend drugs. After the trial court imposed consecutive sentences, we revised the sentences to concurrent terms on appeal. *Id.* In so doing, we explained, "the purpose of *Beno* in prohibiting consecutive sentences when the police entice additional drug buys, applies whether or not different drugs are involved. Therefore, we conclude that the holding in *Beno* is applicable even if the defendant provides a different type of drug during additional buys." *Id*.

[12] What's more, in *Williams v. State*, we held that the principle that "the State may not 'pile on' sentences by postponing prosecution in order to gather more evidence . . . applies equally to convictions arising from evidence gathered as a direct result of the State-sponsored criminal activity." 891 N.E.2d 621, 635

(Ind. Ct. App. 2008). And, more recently, our supreme court took the same approach in holding that consecutive sentences were inappropriate where controlled buys led to a search and additional drug-related convictions. *Eckelbarger v. State*, 51 N.E.3d 169 (Ind. 2016). In *Eckelbarger*, an informant purchased methamphetamine from the defendant twice in the period of one week and police then used the evidence of the controlled buys to obtain and execute a search warrant on the defendant's residence. The former resulted in two counts of dealing in methamphetamine (by delivery), both Class B felonies (Counts I and II), while the latter resulted in one count of dealing in methamphetamine (by manufacture), a Class B felony (Count III), and one count of possession of precursors with intent to manufacture methamphetamine, a Class D felony (Count IV). The trial court imposed sixteen-year sentences on Counts I and II to be served concurrently, as well as a sixteen-year sentence on Count III and a three-year sentence on Count IV to be served concurrent with Count III. The sentences for Counts I and II were then ordered to be served consecutive to Counts III and IV, for an aggregate sentence of thirty-two years, with eight suspended to probation. On transfer, our supreme court cited *Gregory* for the proposition that "[c]onsecutive sentences are not appropriate when the State sponsors a series of virtually identical offenses," and revised the defendant's sentence so that all four counts ran concurrently. *Eckelbarger,* 51 N.E.3d at 170.

[13] Similar to the defendants in *Beno*, *Gregory*, and *Hendrickson*, Richey was enticed by the police to make an additional sale as part of a sting operation. And,

notably, the drug buys involved here occurred only one day apart—even closer in temporal proximity than the four days at issue in *Beno*, 581 N.E.2d at 923, the ten days at issue in *Gregory*, 644 N.E.2d at 544, or the two-month period in *Hendrickson*, 690 N.E.2d at 766. To this point, the State seems to acknowledge the factual similarities with *Beno* and *Gregory*, but argues that Richey's crimes were "materially distinct," and that Richey's "subsequent sale of heroin . . . was a grave escalation in her illegal trafficking." Brief of the Appellee at 10-11. However, the State's argument is premised on the fact that two different drugs were involved, while failing to so much as acknowledge our decision in *Hendrickson*, let alone distinguish it.

[14] Moreover, to the extent the State argues that the sale of heroin constituted a "grave escalation in [Richey's] illegal trafficking," it was Detective Moore who solicited a different drug, rather than it being Richey who offered it. Although that, of course, by no means diminishes Richey's culpability for the underlying crime, allowing the State to utilize such a loophole would effectively eviscerate the well-established prohibition on stacking sentences for separate drug deals resulting from the same police sting operation. That prohibition applies whether the aggregate sentence is 120 years, as in *Gregory*, or six years, as in this case. Therefore, we find the State's argument unpersuasive and conclude that the trial court's imposition of consecutive sentences, on these facts, was inappropriate.

# B. Character of the Offender

[15] Richey also argues that her character rendered her sentence inappropriate.

> The "character of the offender" portion of the standard refers to the general sentencing considerations and the relevant aggravating and mitigating circumstances. We assess the trial court's recognition or non-recognition of aggravators and mitigators as an initial guide to determining whether the sentence imposed was inappropriate.

*Reis v. State*, 88 N.E.3d 1099, 1104-05 (Ind. Ct. App. 2017) (citations omitted).

[16] Here, the trial court found two aggravating circumstances, Richey's criminal history and history of probation violations, but no mitigating circumstances. Based on those findings, the trial court determined Richey was not a candidate for probation.

[17] On appeal, Richey minimizes her criminal history, arguing that she is now fifty-two years old with only one felony conviction. However, Richey's misdemeanor record is extensive, dating back over thirty years with a sharp increase in criminal conduct around 2010. And, as we often emphasize, "[e]ven a minor criminal record reflects poorly on a defendant's character." *Reis*, 88 N.E.3d at 1105. Nevertheless, as discussed above, we conclude these offenses dictate the imposition of concurrent—not consecutive—sentences.

# Conclusion

[18] The nature of Richey's crimes rendered the imposition of consecutive sentences inappropriate. We therefore reverse Richey's sentence and remand for the trial court to issue a new sentencing order consistent with this opinion.

[19] Reversed and remanded.

Najam, J., concurs.

Altice, J., dissents with opinion.

| | |
|---|---|
| Connie D. Richey,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>03A01-1710-CR-2404 |

**Altice, Judge, dissenting.**

[20] I believe that the extraordinary relief of appellate sentence revision is not warranted in this case and, therefore, I dissent. Although the convictions both arose from State-sponsored buys that were close in time, I agree with the State that the offenses were materially distinct in that the subsequent sale of heroin was a significant escalation of Richey's illegal drug trafficking. Further, I do not agree with *Hendrickson v. State*, 690 N.E.2d 765, 767 (Ind. Ct. App. 1998), *trans. not sought*, to the extent that it concludes the sale of different drugs during each buy cannot weigh into our sentencing analysis. In both *Gregory* and *Beno*, our Supreme Court emphasized that the defendant sold the same drug to the same informant during each buy resulting in virtually identical State-sponsored

buys. *Gregory v. State*, 644 N.E.2d 543, 544-46 (Ind. 1994); *Beno v. State*, 581 N.E.2d 922, 924 (Ind. 1991).

[21] Moreover, in this case, Richey received an aggregate sentence of only six years, which amounts to the maximum sentence she faced for her Level 5 felony conviction alone. This is a far cry from the 100-year sentence in *Beno* and the 120-year sentence in *Gregory* found inappropriate.